# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| RODNEY HENRY, | : | MOTION TO VACATE |
| Federal Reg. No. 65868-019, | : | 28 U.S.C. § 2255 |
|     Movant, | : | |
| | : | CRIMINAL NO. |
|     v. | : | 1:14-CR-98-WSD-JSA-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
|     Respondent. | : | 1:16-CV-1494-WSD-JSA |
| | : | |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

In the instant § 2255 motion, Movant seeks to challenge the constitutionality of his sentences, which were imposed on May 20, 2015, following a guilty plea entered in the Northern District of Georgia. (Docs. 19, 23, 38).

I.    <u>Procedural History</u>

Movant and two co-defendants waived indictment and agreed to be charged by criminal information with conspiring to defraud the United States by obtaining payment and allowance of false income tax refunds, in violation of 18 U.S.C. § 286, and aggravated identity theft, in violation of 18 U.S.C. § 1028A. (Docs. 1, 3, 7, 11). On May 22, 2014, while represented by Rickey Richardson, Movant entered a negotiated guilty plea to both counts. (Docs. 19 & Attach. 1, 23). The negotiated plea agreement contains a waiver of Movant's appellate and collateral rights:

33.     LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or variance above the sentencing guideline range as calculated by the district court.   The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

(Doc. 19, Attach. 1 at 17, ¶ 33).  In connection with the negotiated plea agreement, Movant agreed to cooperate with the Government in exchange for a motion to reduce Movant's sentence under Rule 35(b) of the Federal Rules of Criminal Procedure and/or pursuant to Section 5K1.1 of the United States Sentencing Guidelines (hereinafter "Guidelines," "Sentencing Guidelines," or "U.S.S.G.").[1] (Doc. 19, Attach. 1 at 7-10).  Movant did, in fact, cooperate with the Government by testifying at the trial of one of his co-conspirators, and before sentencing the Government filed a motion for downward departure under U.S.S.G. § 5K1.1. (Doc. 34).  On May 20, 2015, United States District Judge William S. Duffey, Jr.

---

[1] U.S.S.G. 5K1.1 provides that upon motion by the Government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the Court may consider several factors and depart from the Sentencing Guidelines by reducing the defendant's sentence.

2

sentenced Movant to a total sentence of ninety-four months of imprisonment to be followed by three years of supervised release, plus restitution.[2]  (Doc. 38).

Movant filed a *pro se* § 2255 motion in this Court on May 6, 2016 [Doc. 45], and raised the following claims for relief: (1) the Court erred in calculating the amount of loss at sentencing; (2) Movant's attorney provided ineffective assistance for failing to move to continue sentencing until after new amendments to the Sentencing Guidelines took effect on November 1, 2015; and (3) Movant's attorney provided ineffective assistance of counsel for failing to advise Movant of his appellate rights.  (Doc. 45).  In its response, the Government requested a hearing on all three of Movant's grounds for relief.  (Doc. 48).  The undersigned appointed counsel for Movant, and counsel filed an amended § 2255 motion and raised the following grounds for relief: (1) Movant's counsel provided ineffective assistance by failing to advise Movant of his appellate rights; (2) Movant's counsel provided ineffective assistance of counsel by failing to properly investigate the facts of the case and object to the six-level enhancement under U.S.S.G. § 2G1.1 for the number of victims; (3) the Court violated the law when it sentenced Movant by applying that six-level enhancement, which was not supported by the evidence; and (4) Movant's counsel provided ineffective assistance by failing to argue to the

---

[2] Specifically, Movant was sentenced to seventy months for conspiracy to defraud the United States, and the mandatory minimum twenty-four month consecutive sentence for aggravated identity theft.  (Doc. 38 at 2).

AO 72A
(Rev.8/82)

Court that it should consider the amended U.S.S.G. § 2B1.1 when imposing its sentence, and/or for failing to move to continue the sentencing hearing until after the 2015 amendments to the Sentencing Guidelines went into effect. (Doc. 58). The undersigned conducted an evidentiary hearing on October 18, 2016, during which Movant and his former attorney, Rickey Richardson, testified. (Docs. 64, 65).

For the following reasons, the undersigned **RECOMMENDS** that the motion to vacate [Docs. 45, 58] be **DENIED**.

II.     Applicable Law

    A.     Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject

4

to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

B.   Ineffective Assistance of Counsel

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688)). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010). The court may

5

"dispose of [the] ineffectiveness [claim] on either of its two grounds." *Atkins v. Singletary*, 965 F. 2d 952, 959 (11th Cir. 1992); *see Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process," *Id.* at 59, by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). *See also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail."). "[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*." *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted).

6

III.   Analysis

The Government argues that Movant did not receive ineffective assistance of counsel, and that Movant procedurally defaulted his claim that the Court sentenced him in violation of the United States laws by applying the six-level enhancement. (Doc. 70).  The undersigned agrees with the Government.

A.   Evidence Presented at the Evidentiary Hearing

During the evidentiary hearing, Movant testified that he had been preparing fraudulent tax returns using the personal information (*i.e.,* names and social security numbers) of approximately 475 victims, information which he received from several different sources.  (Doc. 65 at 4).  Movant estimated that "probably" or "at least" half of the 475 victims voluntarily provided the information to him so that they would receive part of the refund, and that he told this information to Richardson, his attorney.  (*Id.* at 6, 8, 10).  Movant also testified that Richardson never went over discovery or the Presentence Report ("PSR") with Movant and never provided Movant with any information about filing an appeal.  (*Id.* at 8, 11). According to Movant, Richardson also had never provided Movant with a copy of the plea agreement nor discussed any part of the agreement with him, Movant had not ever read the plea agreement, and Movant did not remember that he had agreed that there were at least 250 victims in the case.  (Doc. 65 at 12-14).

7

Movant admitted on cross-examination that despite the fact that he read the PSR which stated that there were more than 250 victims in the case, he never told Richardson that number was incorrect. (*Id.* at 15). Nor did he ever tell Richardson that he wanted to file an appeal. (*Id.*). Movant also conceded that he never went to trial and never appealed any of his previous sixteen convictions. (*Id.* at 16).

Richardson testified that he had known Movant for approximately fifteen to twenty years, and during that time had handled numerous criminal cases for Movant, whether for Movant, Movant's wife, or Movant's sons. (Doc. 65 at 22). Richardson was representing Movant in another case in the Douglas County courthouse when Agent Johnson of the Federal Bureau of Investigations ("FBI") approached Richardson, introduced himself, and indicated that Movant was the subject of an investigation involving forgeries, improper checks and filings, and other similar charges. (*Id.* at 22-25). Movant told Richardson that he wanted to stay out of jail for as long as he possibly could, and that he would do whatever it would take in order to do so. (*Id.*).

In the beginning Richardson had discussed with Movant that if he agreed to cooperate he would receive the best benefit, and even at that early stage of the proceedings he explained the Sentencing Guidelines to Movant. (Doc. 65 at 26). Richardson indicated that he knew Movant for many years, knew what type of business Movant was running, and discussed the facts of this case with Movant in

8

that context.  (Doc. 65 at 27-28).  In contrast to Movant's testimony, Richardson testified that as soon as he received the plea agreement from the Government, he forwarded the email containing the agreement to Movant and called Movant to verify that Movant received it.  (*Id.* at 28).  Richardson testified that he went over the plea agreement with Movant "two or three [times] at least," "paragraph by paragraph," and unequivocally stated that if Movant had testified that Richardson had not, in fact, gone over the plea agreement with Movant, "[t]hat wouldn't be true."  (*Id.* at 29, 32, 50).  In connection therewith, Richardson specifically discussed with Movant that he was agreeing that the loss resulting from his offenses was between one million and two-and-a-half million dollars, including relevant conduct, and that he would receive the six-level upward adjustment under U.S.S.G. § 2B1.1(b)(2)(C) because there were 250 or more victims.  (*Id.* at 29-30).

According to Richardson, at first Movant was concerned with the fact that he never received a million dollars insofar as the loss calculation, but Richardson explained to Movant that even though he may not have received a million dollars, the loss calculation was based on all of the relevant conduct to which Movant was a party.  (Doc. 65 at 30).  Richardson testified that at one point there were "sheets of victims" because Movant had been engaging in this ongoing enterprise for so long [*Id.* at 31], and from the beginning Richardson advised Movant that he should agree that there were 250 or more victims, as Richardson's concern – and he

9

believed that Movant shared the same concern since Movant had not taken "copious notes" – that the number of victims could potentially become a much larger number if the investigation were to continue. (*Id.* at 31-32). In other words, Richardson thought from the beginning that it would better to try to "lock in" the number of victims so as to halt the investigation and stop those numbers from increasing even more. (Doc. 65 at 31-32). In all of their discussions Movant never told Richardson that there were less than 250 victims involved. (*Id.* at 32).

Richardson also discussed with Movant the limited waiver of appeal contained in the plea agreement and Movant never told Richardson that he did not understand the waiver or had any questions in connection therewith. (*Id.*). Because Richardson has known and represented Movant for such a long time, he knew Movant as a person who generally understands the judicial process. (*Id.* at 33). Richardson also went over the PSR with Movant prior to sentencing. (*Id.* at 34).

Insofar as discussing any potential appeal, Richardson indicated that he generally went over Movant's appellate rights with Movant, but "it was never a question or issue that he wanted to appeal." (Doc. 65 at 34). Movant never asked Richardson to file an appeal, and in fact, Movant called Richardson shortly after sentencing because Movant's son had been accused of attempted carjacking and had been shot, and Movant wanted Richardson to determine how his son was doing

10

and to represent him, which Richardson did.  (*Id.* at 36).  During that conversation, however, Movant never told Richardson that he wanted to appeal his sentence, nor did he do so at any other time.  (*Id.*).  Richardson was not aware of any meritorious issues that Movant could have raised on appeal that would not have been barred by the appellate waiver.  (Doc. 65 at 37).

>    B.    Movant's Plea was Knowing and Voluntary.

Although the appellate waiver in Movant's plea agreement precludes both direct and collateral review of both his sentences and convictions, an appellate waiver does not bar claims for ineffective assistance of counsel relating to the plea agreement or waiver, or claims challenging the voluntariness of the plea.  *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007); *Williams v. United States*, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005).  Movant does not appear to challenge the voluntary nature of his plea; however, because he raises a claim for ineffective assistance of counsel for counsel's alleged "failure to investigate the facts," the undersigned will review this claim as a claim that his plea was not entered into voluntarily.[3]

---

[3] The undersigned notes, however, that this claim is raised in conjunction, and appears to be interconnected, with his claim that counsel should have objected to the six-level enhancement for 250 or more victims – a claim which, as will be discussed further herein, is barred by the appellate waiver in the plea agreement and is without merit.  (*See* Doc. 58 at 6-9).  Nevertheless, out of an abundance of caution the undersigned will review this ineffective assistance claim as an argument that Movant did not voluntarily enter into his plea.

11

It is well settled that there is a strong presumption that statements made during the plea colloquy are true.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Anderson*, 384 F. App'x 863, 865 (11th Cir. 2010) ("There is a strong presumption that statements made during a plea colloquy are true."); *accord, United States v. Munguia-Ramirez*, 267 F. App'x 894, 897 (11th Cir. 2008)*; Patel*, 252 F. App'x at 974.  Where, as here, Movant's claim of ineffective assistance of counsel is in direct conflict with his statements under oath, he has a strong burden to show that his statements under oath were false.  *Patel*, 252 F. App'x at 974-75.  Movant, however, has not met this burden.

During the plea hearing, Judge Duffey asked the Government to summarize the plea agreement, and in connection with the six-level enhancement about which Movant now complains, the Government stated that:

> The government agrees to recommend and the defendant agrees that the applicable offense guideline for Count One is Section 2B1.1(a)(2), that the amount of loss resulting from the offenses of conviction and all relevant conduct is more than one million but less than 2.5 million, and that defendant receive the six-level upward adjustment pursuant to Section 2B1.1(b)(2)(C).

(Doc. 23 at 15-16).  Following the Government's summary of the plea agreement, Movant told Judge Duffey that he had listened carefully to that detailed summary and affirmed that the Government had accurately summarized the terms of the plea agreement.  (*Id.* at 19).  Movant then swore that:  he understood the terms of the

12

plea agreement that the Government had summarized; Richardson had gone over and explained the terms of the plea agreement with him; no one threatened or forced him to enter into the plea agreement; no one told him that if he did not enter the plea agreement some other action would be taken against him; no promise had been made to him outside the plea agreement that influenced him to plead guilty; no one had told him what actual sentence he would receive; no one suggested to him that he not tell the Court the complete truth on that day; he had enough time to think about his decision to plead guilty and discuss it with Richardson; and he was satisfied with how Richardson had represented him in this matter. (Doc. 23 at 19-22). Movant's sworn statements also indicate that Movant understood that the maximum sentence he faced for Count One (obtaining payment and allowance of false income tax refunds) was up to ten years, and for Count Two (aggravated identity theft) a mandatory minimum of two years after completely serving the time imposed on the first charge. (Doc. 23 at 25-27). Movant also stated that he understood that despite any recommendations by the Government or Richardson, the Court would be authorized to sentence Movant to the maximum authorized punishment on each count, and may impose a sentence more or less severe than the what the Guidelines recommend. (*Id.* at 28, 32).

Judge Duffey next asked the Government to summarize the facts of the case, and told Movant to:

13

> listen carefully again to what Mr. Bly says, because when he's done I'm going to ask if you admit that you engaged in the conduct he describes, and then ultimately I might have some follow-up questions, then I'm going to ask you to admit that you are guilty of the two crimes charged in the information.

(Doc. 23 at 40-41).  The Government then summarized the facts – essentially, that Movant would receive from various sources, victims' information, including names, Social Security numbers, and date of birth, and then Movant would make up other information such as wages, addresses, employment, and federal taxes that had been withheld to generate a fraudulent income tax return and receive a refund. (*Id.* at 52).  The Government also stated that Movant had filed a total of 642 fraudulent tax returns, and of that 642 the exact number of people whose identities were taken was "significantly more than 250 but less than 642."  (*Id.* at 43-44). Finally, the Government stated that Movant freely admitted to the Government:

> that these were fraudulent returns, that he didn't contact any of these people, he didn't know these people, he didn't go out and say, you know, would you like for me to file an income tax return for you. These are names that he bought from people and otherwise obtained on the black market for the purpose of filing federal income tax returns.  He admitted that to the agents, and that certainly would be part of the government's presentation at trial.

(Doc. 23 at 44).  Following the exchange between the Government and the Court, Movant told Judge Duffey that he had listened to Mr. Bly's description and that Mr. Bly had accurately described the facts in this case.  (*Id.* at 52).  Movant admitted that he had committed the crime about 642 times and that he was guilty of the crimes charged.  (*Id.* at 57).

14

Not only did the Government read the appellate waiver at the beginning of the plea hearing, but Judge Duffey also discussed the appellate waiver with Movant:

> THE COURT:      Now, once if I accepted your plea and we went to sentencing and I imposed a sentence, if at the time that the sentence is announced it ends up being more severe than you expected or you otherwise didn't like the sentence, you could appeal it.
>
> But in this case you have a plea agreement, and in your plea agreement you have entered into a provision and agreed to a provision called the limited waiver of appeal in which you have said that you are not going to challenge in any way your conviction, which would occur today if I found you guilty, and you are not going to challenge your sentence in any way once a sentence is imposed. There are two ways to challenge a sentence at a conviction.  One is by direct appeal that is ordinarily allowed after you are sentenced, and you can go to the Court of Appeals and tell them that you disagree with the sentence or your conviction.
>
> And then if that wasn't successful, there is another process that you could take after that called a collateral attack, which is essentially a separate civil lawsuit in which you could claim that the process by which you pled guilty or you were sentenced was not fair or was otherwise improper, and that again is called a collateral attack.
>
> You have agreed not to do any of those things to challenge either your conviction or your sentence, although there are two exceptions that would allow you only to appeal your sentence.
>
> The first is that if I imposed a sentence that's greater than what the guidelines recommend as I determine the guidelines to be, then you may appeal.  If the government appealed, that's a second grounds [sic] upon which you would then be entitled to appeal.

15

> But those – one of those two things must happen in order for you to appeal, and the only thing you can appeal is your sentence.  Do you understand that?
>
> MOVANT:  Yes, sir.

(Doc. 23 at 33-34).  Toward the end of the hearing, Judge Duffey asked Movant if there was anything Movant wished to say before the Court accepted Movant's plea, to which Movant responded, "No, sir.  I just want to say I'm sorry about what I did, and I accept responsibility for everything I have done."  (*Id.* at 61).  Judge Duffey accepted Movant's plea after finding that it was knowing and voluntary with full understanding of the consequences, and that there was a factual basis therefor.  (*Id.* at 61-62).

To the degree that Movant now claims that he never read the plea agreement or that Richardson never went over the agreement with Movant, Richardson remembered specifically sending Movant the plea agreement, since Movant was "pretty vigilant."  (Doc. 65 at 28).  Richardson's testimony that he went over the plea agreement with Movant at least two or three times, paragraph by paragraph, including the six-level upward adjustment for 250 or more victims, is consistent with Movant's sworn statements during the plea colloquy and is more credible than Movant's present self-serving statements that Richardson never did so or that Movant never read the agreement.  Thus, Movant's present self-serving statements have not overcome the strong presumption of the veracity of his sworn statements during the plea hearing upon which the Court's findings were based.  *See United*

*States v. Palacios*, 516 F. App'x 734, 737 (11th Cir. 2013) (finding that the movant did not overcome the presumption of truth during the plea colloquy where after the fact he claimed that he did not have the requisite knowledge for money laundering, because during the plea colloquy he did not object to the government's proffer and explicitly stated that the conduct and knowledge ascribed to him were accurate); *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (noting that testimony at a plea allocution "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.").

Insofar as Movant claims that Richardson was ineffective for failing to investigate the facts (*i.e.*, number of victims), according to Richardson, there were "sheets" of victims since Movant had "been at it" such a long time – the victims came from jails, hotel rosters, and hospitals, to name a few. Because Richardson had represented Movant for so long and knew what Movant's "business" involved, both he and Movant knew there could be "potential other landmines [sic]" and that the number could be "much larger," "probably more than 250" if Movant did not cooperate and/or enter into a plea agreeing to that number. (Doc. 65 at 31). Again, this testimony is more consistent with Movant's discussion with the Court at the plea hearing where his statements seemed to point to the fact that most of the

17

victims were not, in fact, "willing participants"[4] and the fact that he never told Richardson that there were less than 250 victims, despite his current contradictory testimony that at least half of them volunteered their information to him. (Doc. 65 at 4). Finally, had Richardson objected to the six-level enhancement prior to sentencing, Movant would have been in violation of the plea agreement.

Not only does Richardson's testimony demonstrate that he investigated the facts of this case, but he clearly had knowledge of Movant's business from his long-standing relationship and representation of Movant in similar, albeit state, cases, against Movant, and clearly Richardson had a strategic and reasonable explanation for advising Movant to agree to the number of victims and trying to achieve the best result for his client. Thus, Movant has not demonstrated that Richardson rendered ineffective assistance by failing to investigate the facts of this case.

Nor can Movant demonstrate that he was prejudiced thereby; *i.e.,* that a decision to reject the plea agreement would have been rational. Indeed, had Movant gone to trial, Movant would not have received the benefit of the three-level reduction for acceptance of responsibility or the four-level downward

---

[4] For example, Movant told Judge Duffey that the "majority" of identities he received came from a friend who worked at a car lot, and those victims do not appear to have been willing participants. (Doc. 23 at 44, 55). And he agreed with the Government's characterization of the facts that Movant did not know any of the people whose identities he stole. (*Id.* at 44).

18

departure for his cooperation.   Additionally, the evidence against Movant–
including his own statements – was overwhelming.  And it is not likely, after a trial
where this overwhelming evidence would have been presented, that Judge Duffey
still would have sentenced Movant to the low end of the guideline range.  Movant,
therefore, also has failed to demonstrate that a decision to proceed to trial would
have been rational under the circumstances.  *See Padilla*, 130 S. Ct. at 1485;
*United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (holding
movant could not show prejudice – *i.e.*, that a rational person would have rejected
the plea bargain – where by entering the plea his sentence was reduced by eight
years); *United States v. Fisher*, Nos. 5:12CV80545, 5:10CR00037, 2013 WL
1871275, at *5 (W.D. Va. May 3, 2013) (holding that movant did not demonstrate
prejudice where the evidence against him was overwhelming and a rational
defendant would not have rejected a plea agreement that provided him with a
three-level reduction for acceptance of responsibility which significantly lowered
his guideline range); *Segura v. Houston*, No. 8:12CV60, 2013 WL 425247, at *8
(D. Neb. Feb. 4, 2013) (holding no rational defendant would have rejected a plea
where, *inter alia*, by entering the plea the defendant's sentence exposure was
significantly reduced).   Accordingly, Movant has not shown that ineffective
assistance of counsel rendered his plea anything other than knowing and voluntary,
and Movant is not entitled to relief in connection with this ground for relief.

Consequently, the appellate waiver contained in the plea agreement is valid and enforceable. *See United States v. Steele*, 168 F. App'x 897, 900 (11th Cir. 2006) (finding appellate waiver valid where the court specifically questioned the movant about the waiver provision); *United States v. Montes*, 151 F. App'x 846, 853 (11th Cir. 2005) (finding appellate waiver valid where judge reviewed the waiver with the movant and he agreed that he was freely and voluntarily waiving his right to appeal his sentence); *United States v. Bushert*, 997 F2d 1343, 1350-51 (11th Cir. 1993) ("One of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up that right.'") (citations omitted); *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005) (finding appellate waiver enforceable where the court expressly questioned movant about the specifics of the waiver and determined that he had entered into the written plea agreement, which included the waiver, freely and voluntarily, and where "[t]he plain language of the agreement informed [Movant] that he was waiving a collateral attack on his sentence."). *See also United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008) (stating that a waiver is valid if the Government shows that either: "(1) the district court specifically questioned the [movant] about the waiver; or (2) the record makes clear that the [movant] otherwise understood the full significance of the waiver.").

Because the appellate waiver is valid and enforceable, those claims barred by the appellate waiver in this § 2255 motion include that: counsel was ineffective

20

by failing to object to the six-level enhancement for the number of victims [Ground 2(b)], failing to move to continue the sentencing hearing until the 2015 Amendments to the Sentencing Guidelines came into effect, and/or to argue that the Court should consider the amended U.S.S.G. § 2B1.1 guideline when imposing Movant's sentence [Grounds 4(a) and (b)]; and the Court imposed Movant's sentence in violation of United States laws when imposing the six-level enhancement [Ground 3].[5] *See Boyle v. United States*, 446 F. App'x 216, 221 (11th Cir. 2011) ("In sum, we conclude that, to the extent Boyle's § 2255 motion raised a guidelines calculation error, it is barred by his sentence appeal waiver."); *United States v. Riolo*, 398 F. App'x 568, 570-71 (11th Cir. 2010) ("[T]he waiver would prevent [the movant] from raising a claim of ineffective assistance of counsel at sentencing[.] . . ."); *Patel*, 252 F. App'x at 974 ("We have held that a valid appeal waiver precludes § 2255 claims based on ineffective assistance of counsel at sentencing."); *United States v. Vallas*, 218 F. App'x 877, 880 (11th Cir. 2007) ("Although Vallas makes several arguments in an attempt to attack the validity of his sentence, none of the exceptions to the appeal waiver apply. Therefore, we decline to consider his arguments regarding the sentence's reasonableness . . . because they are all barred by the enforceable appellate

---

[5] Neither of the exceptions to the appellate waiver (*i.e.,* an upward departure or variance above the calculated sentencing guideline range or the Government initiated an appeal) are present here.

waiver); *Williams*, 396 F.3d at 1342 (holding that a valid sentence-appeal waiver, entered into voluntarily and knowingly pursuant to a plea agreement, precludes the movant from attempting to attack the sentence in a collateral proceeding through a claim of ineffective assistance of counsel during sentencing); *Vaca-Ortiz v. United States*, 320 F.Supp.2d 1362, 1365-66 (N.D. Ga. 2004) (O'Kelley, J.) (holding a waiver of the right to appeal or mount a collateral attack can serve to bar a subsequent claim of ineffective assistance of counsel during sentencing).

C.     <u>Movant's Ineffective Assistance Claims Are Otherwise Without Merit.</u>

Even if the appellate waiver did not bar Movant's ineffective assistance of counsel at sentencing claims, however, they are without merit.

1.     <u>Counsel's Failure To Object To The Six-Level Enhancement For The Number Of Victims</u>

First, as discussed previously herein in Section III.B., the six-level enhancement was contained in the plea agreement and was agreed to by Movant; therefore, Movant would have been in violation of the plea agreement had Richardson objected thereto. In any event, this claim of ineffective assistance also is without merit.

Indeed, Movant's entire argument revolves around the fact that "willing participants" constituted many of those persons erroneously included as victims. (Doc. 66 at 14). As the Government points out, however, U.S.S.G. § 2B1.1 defines

a "victim" as any individual whose means of identification was used unlawfully *or* without authority. U.S.S.G. § 2B1.1 cmt. n.4(E) (2014). The Eleventh Circuit has held that similar language in the aggravated identity theft statute prohibits a person from obtaining another person's identification even with that person's permission if he used the identification for an unlawful or illegitimate purpose. *See United States v. Joseph*, 567 F. App'x 844, 848 (11th Cir. 2014) (holding that "the government could establish that a defendant used another's means of identification without lawful authority by showing that, even if he took the means of identification with permission, he used it for an unlawful or illegitimate purpose."); *United States v. Hurtado*, 508 F.3d 603, 607-08 (11th Cir. 2007) (holding that the plain reading of the identity theft statute indicates that "the phrase 'without lawful authority' prohibits methods of obtaining another person's identification beyond stealing."); *United States v. Hines*, 472 F.3d 1038, 1039-40 (8th Cir. 2007) (concluding that regardless of whether the defendant used the victim's name "with permission or based on consent in exchange for money and illegal drugs, [the defendant] acted without lawful authority in using [the victim's] identification."), *abrogated on other grounds by Flores-Figueroa v. United States*, 556 U.S. 646 (2009).

The Government cites to a recent unpublished Eleventh Circuit opinion that is directly on point, *United States v. Smith*, __ F. App'x __ 2016 WL 5349212 (11th Cir. Sept. 26, 2016), *petition for cert. docketed in Tillison v. United States*

No. 16-7305 (December 23, 2016), in which the Eleventh Circuit rejected the precise argument Movant makes here. *See id.* at *1. In *Smith*, the defendants argued that the district court erred by enhancing their sentences when it incorrectly counted as "victims" those persons who voluntarily provided access to their debit card information, which the defendants then used to cash fraudulent checks. *Id.* The Eleventh Circuit cited to its decision in *Hurtado*, *supra*, where it had "addressed similar language in the identity theft statute" and "determined that to establish the 'without lawful authority' element of aggravated identity theft, the government was not required to show that the defendant obtained another person's identification by stealing" because "'[i]t is not absurd to conclude that Congress also intended to deter the purchase of identification documents by money.'" *Smith*, 2016 WL 5349212, at *1 (quoting *Hurtado*, 508 F.3d at 608 n.6.).[6]

Movant's attempt to distinguish *Smith* is tenuous. Even if it is unpublished, the conclusion in *Smith* is based on *Hurtado*, a published opinion, and its interpretation of similar language in the aggravated identity theft statute. Moreover, contrary to Movant's claim that the victims in *Smith* only were

---

[6] As demonstrated by the Eleventh Circuit's decision in *Smith*, Movant's argument that these cases are inapposite because the term "without lawful authority" is different than "without authority" is merely an exercise in semantics. Indeed, the relevant factor in these cases, as here, is that Movant proceeded to use the identifications – whether with permission or not – for an unlawful or illegitimate purpose; *i.e.*, fraudulent tax returns.

24

considered to be victims because they were charged fees associated with the fraudulent activity, that fact was never considered by the Eleventh Circuit – which may be why Movant cites to documents from the lower court's docket in that case in attempting to distinguish *Smith*'s facts.  Instead, the Eleventh Circuit simply found that "[t]he district court correctly counted, as victims, persons who voluntarily provided access to their debit card information, which [the defendants] then used to cash fraudulent checks: [the defendants] used the debit card information in an unlawful way, regardless of whether [they] had the authority to have the debit card information." *Smith*, 2016 WL 5349212, at *2.  Similarly here, regardless of whether people willingly gave Movant their information, Movant also used that information in an unlawful way, *vis-a-vis* filing fraudulent tax forms.  And had the investigation continued if they had not "locked" in the number of victims at 250 or more, the number of victims easily could have skyrocketed based on how long Movant actually had been perpetrating the scheme.   In light of these facts and the Eleventh Circuit's precedent, this Court cannot say that Richardson's failure to challenge the number of victims was anything other than a reasonable, professional decision.  Moreover, as discussed previously herein in Section II.B., *supra*, Movant has failed to show prejudice – *i.e.,* that it would have been rational to reject the plea and proceed to trial.  Thus, Movant is not entitled to relief in connection with Ground 2(b).

25

2.      Counsel's Failure To Request That The Court Apply The Amended Guidelines Or Ask For A Continuance Of Sentencing Until The Amended Guidelines Went Into Effect

Movant next argues that Richardson was ineffective for failing to request that the Court use the amended Sentencing Guidelines that would go into effect in November of 2015 and/or failing to request a continuance of sentencing until after those amended Guidelines went into effect.[7]  The undersigned disagrees.

Movant entered his guilty plea on May 22, 2014, pursuant to the negotiated plea agreement.  The Government first sent Richardson a proposed plea agreement on March 13, 2014; thus, Richardson would have engaged in negotiations with the Government about the details to be agreed upon by both parties from that date at the latest – the 2014 version of the § 2B1.1 six-level enhancement being one of those details.  Notably, the changes to the Guidelines, including amended § 2B1.1, was not submitted to Congress until more than one year later on April 30, 2015, and did not go into effect until November 1, 2015.[8]  "It is well settled in this circuit that an attorney cannot be deemed ineffective for failing to anticipate a later

_____

[7] Movant argues that  section 2B1.1 of the amended Guidelines would have reduced Movant's victim enhancement from six levels to two, for a four-level reduction.  *See* U.S.S.G. § 2B1.1.

[8] Movant himself indicates that the Sentencing Commission did not even announce the changes to the Guidelines until January of 2015, nearly eight months after Movant entered into the plea in which he agreed to the six-level enhancement. (Doc. 66 at 26).

26

change in the law." *Parker v. Secretary, Fla. Dep't of Corr.*, 555 F. App'x 870, 874 (11th Cir. 2014); *see also Black v. United States*, 373 F.3d 1140, 1144, 1146 (11th Cir. 2004) (holding that counsel does not render deficient performance in "failing to predict what was not yet a certain holding"); *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (noting that "we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel[,]" and that precedent applies even when the "issue was, in hindsight, a sure fire winner"); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) ("To be effective within the bounds set by *Strickland*, an attorney need not anticipate changes in the law.").

Moreover, the normal practice in this Court is to set a sentencing hearing fairly quickly after a plea. Here, however, Judge Duffey did not immediately set a date for sentencing in anticipation of Movant's cooperation *vis-a-vis* his testimony at a co-conspirator's trial. (*See* Doc. 23 at 62). And after that trial Movant's sentencing hearing occurred almost a year to the day of his plea, and Movant received a four-point reduction for that cooperation. (*See* Doc. 50 at 5-9). Movant also received the six-level enhancement under § 2B1.1 of the 2014 Guidelines to which he agreed – which still was in effect at the time of sentencing.[9]

_____

[9] As both parties have noted, generally "a convicted defendant's sentence is based on the United States Sentencing Commission Guidelines Manual 'in effect on the date the defendant is sentenced.'" *United States v. Bailey*, 123 F.3d 1381,

Had Richardson asked that the amended Guidelines be applied, Movant would have been in violation of the plea agreement into which he had entered nearly one year before, likely unraveling the entire plea agreement leading to further investigation and potentially many more victims, a trial, and the loss of the reductions for cooperation and acceptance of responsibility.

Furthermore, if amended U.S.S.G. § 2B1.1(b)(2)(A) were to apply, Movant's argument presumes that he automatically would receive only a two-level increase for ten or more victims under that amendment. However, amended U.S.S.G. § 2B1.1(b)(2)(A) provides for a six-level increase to apply if twenty-five or more victims suffered a substantial financial hardship. *See id.* Given the fact that at the time the FBI agent stopped investigating the case based on Movant's cooperation there were "sheets" of, or "significantly more than 250 but less than 642" victims, had the investigation continued it certainly would not be a stretch to conclude that the Government could have been able to prove that at least twenty-five of those victims whose identities were stolen suffered a financial hardship such that a six-level increase still would apply under amended U.S.S.G. § 2B1.1(b)(2)(C). Importantly, none of these potential consequences take into account how the Court would view any such request – either for the amended

_____

1403 (11th Cir. 1997); U.S.S.G. § 1B1.11(a).

28

AO 72A
(Rev.8/82)

Guidelines to apply or for a continuance to allow those Guidelines to go into effect – after an already protracted proceeding.

Indeed, Richardson expressed a similar concern:

Q:          So you never asked for Mr. Henry to receive the benefit of those [soon-to-be-amended Guidelines]?

RICHARDSON:   Well, I knew it was a [sic] time for this case to be disposed of, and I also knew that it was not a legal reason to delay his sentencing, because of potential new guidelines.

(Doc. 65 at 43-44).  And, in fact, at the plea hearing over one year before Movant claims counsel should have asked for a continuance, Judge Duffey already had expressed his concern that the case should have been concluded more promptly. (Doc. 23 at 69).  Given Judge Duffey's prior concern at the plea hearing and the even greater amount of time that passed from plea until sentencing, as well as the fact that Movant had agreed to the specific enhancement in the 2014 Guidelines, Movant has not demonstrated that had Richardson made a request for yet another six months to pass and/or to allow a guideline different than that which Movant agreed to apply, Judge Duffey would have granted any such request.  Perhaps more importantly, however, "[i]t is improper for a judge to grant (or deny) a continuance for the very purpose of changing the substantive law applicable to the case." *United States v. Tanner*, 544 F.3d 793, 796 (7th Cir. 2008).  Movant, therefore,

cannot demonstrate that he was prejudiced by any failure on Richardson's part to either ask that the amended Guidelines apply to Movant or request a continuance for yet another six months so that the amended Guidelines could go into effect. *See id.*; *see also United States v. Flores-Ochoa*, 139 F.3d 1022, 1024-25 (5th Cir. 1998) (rejecting the defendant's claim that counsel was ineffective for failing to ask for a continuance so that he could be sentenced under a soon-to-be-amended version of the Sentencing Guidelines absent evidence that the court would have granted the motion; thus, the defendant could not demonstrate prejudice); *United States v. Gonzalez-Lerma*, 71 F.3d 1537, 1542 (10th Cir. 1995) ("[W]e can foresee defendant's theory [that a continuance can be granted in order to enable a defendant to take advantage of a foreseeable change in the law] creating an ominous situation in which every attorney whose client faces sentencing would attempt to delay sentencing each time lawmakers debate a new statute or amendment.  This is an outcome we cannot allow."), *overruled on other grounds in United States v. Flowers*, 464 F.3d 1127, 1130 n.1 (10th Cir. 2006); *United States v. Garcia*, 999 F.2d 545, 545 (9th Cir. 1993) (per curiam) (noting that "the opportunity for a better sentence under a new Amendment to the Guidelines is not a legitimate reason to request a continuance" and "[g]ranting a continuance on this basis would greatly inconvenience a district court's ability to impose sentence as defendants would repeatedly seek continuances and cause delays upon learning of Amendments to the Guidelines that may benefit the defendant but are yet to take

30

effect"). Movant, therefore, cannot demonstrate that Richardson was deficient in failing to make any such request or that Movant was prejudiced thereby. Accordingly, Movant is not entitled to relief in connection with these ineffective assistance of counsel claims in Grounds 4(a) and 4(b).

> D.     <u>Movant's Claim That The Court Improperly Enhanced Movant's Sentence By Six Levels Is Procedurally Defaulted.</u>

The procedural default doctrine reflects the "general rule" that "claims not raised on direct appeal may not be raised on collateral review[.]" *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Magluta v. United States*, __ F. App'x __, 2016 WL 4524462, at *5 (11th Cir. Aug. 30, 2016). To adequately preserve a claim, a movant must raise it both before the trial court (whether by motion, objection, or otherwise), and also on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986); *see also McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (stating that in order to avoid a procedural default, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.") (internal quotation marks and citations omitted). Because Movant never raised this claim that the Court sentenced him against United States laws, he is procedurally barred from raising it in this § 2255 motion.

A movant may overcome the procedural default of his claim, however, if he shows both cause for the default as well as actual prejudice suffered as a result of

the alleged error.  *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2005).

"[T]o show cause for a procedural default, [a § 2255 movant] must show that some

objective factor external to the defense prevented [him] or his counsel from raising

his claims on direct appeal and that this factor cannot be fairly attributable to [his]

own conduct."  *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (per

curiam).  To demonstrate actual prejudice, a § 2255 movant must show that the

alleged error "worked to his *actual* and substantial disadvantage, infecting his

entire trial with error of constitutional dimensions."  *Reece v. United States*, 119

F.3d 1462, 1467 (11th Cir. 1997) (quoting *United States v. Frady*, 456 U.S. 152,

170 (1982)) (emphasis in original).  Alternatively, a § 2255 movant also may

overcome a procedural default if "a constitutional violation has probably resulted

in the conviction of one who is actually innocent."  *Lynn*, 365 F.3d at 1234-35.  To

make a credible showing of actual innocence, "a movant 'must show that it is more

likely than not that no reasonable juror would have found [him] guilty beyond a

reasonable doubt' in light of . . . new evidence of innocence."  *McKay*, 657 F.3d

at 1196 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  "The [actual innocence]

gateway should open only when a petition presents 'evidence of innocence so

strong that a court cannot have confidence in the outcome of the trial unless the

court is also satisfied that the trial was free of nonharmless constitutional error."

*McQuiggan v. Perkins*, __ U.S. __, 133 S.Ct. 1924, 1936 (2013) (citing *Schlup*,

513 U.S. at 316).

32

To the degree that Movant attempts to argue ineffective assistance of counsel as "cause" for the procedural default, as discussed throughout this entire report and recommendation, he has not demonstrated that Richardson's representation of him during the proceedings was deficient.  Nor does he claim that he is actually innocent of the crimes to which he entered his plea.  Thus, this ground for relief fails.

> E.   Counsel Was Not Ineffective With Regard to Movant's Appellate Rights.

In this Circuit, the right to appeal a criminal case is fundamental.  *See Arrastia v. United States*, 455 F.2d 736, 739 (5th Cir. 1972) (citations and quotations omitted).[10]  When an attorney disregards instructions from a defendant to file an appeal, therefore, such disregard constitutes ineffective assistance of counsel *per se. Roe v. Flores-Ortega*, 528 U.S. 470, 477-86 (2000).  This type of ineffective assistance claim also is analyzed under the two-pronged *Strickland* test. *Id.* at 476-77.  Both Movant and Richardson testified that Movant did not ask Richardson to file an appeal.

Thus here, where Movant did not specifically ask for an appeal, the first inquiry the Court must make is whether Richardson actually consulted with

---

[10] Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

33

Movant about an appeal.  *Flores-Ortega*, 528 U.S. at 478; *Thompson*, 504 F.3d 1203, 1206 (11th Cir. 2007).  Counsel's duty to consult with his client requires counsel to inform the defendant about the right to appeal, advise the defendant about the advantages and disadvantages of an appeal, and make a reasonable effort to determine whether the defendant wishes to pursue the appeal – regardless of the merits of such an appeal. *Flores-Ortega*, 528 U.S. at 478; *Thompson*, 504 F.3d at 1206.  If counsel did not adequately consult with the movant, the Court next must ask whether that constituted deficient performance – *i.e.*, whether under the circumstances of that particular case counsel had a constitutional duty to consult with the defendant about an appeal.  *Flores-Ortega*, 528 U.S. at 479; *Thompson*, 504 F.3d at 1207.

As discussed previously in Section III.A., *supra*, Richardson testified that he has known and represented Movant for fifteen to twenty years, and went over the plea agreement with Movant on several occasions, paragraph by paragraph, including the appellate waiver.  Richardson also generally had discussed Movant's appellate rights with Movant, but "it was never a question or issue that he wanted to appeal" [Doc. 65 at 34], as at no point during Richardson's entire representation of Movant in this case did Movant ever indicate that he wanted to do anything other than enter a guilty plea and cooperate with the Government.  (*Id.* at 37).

According to Richardson's testimony, therefore, Richardson satisfied the duty to consult with Movant about an appeal by discussing with Movant the rights

34

Movant had under the appellate waiver and advising Movant generally about his appellate rights.

Even if the undersigned did not find that Richardson consulted with Movant about his appellate rights, however, the dispositive question in this case then would become "whether counsel's failure to consult with [Movant] itself constitutes deficient performance." *Flores-Ortega*, 528 U.S. at 478; *Ortero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007). The answer still remains a resounding no. Indeed, a criminal defense lawyer does not have a *per se* constitutional obligation to consult with his client about an appeal. *See Flores-Ortega*, 528 U.S. at 479; *Otero*, 499 F.3d at 1270 ("We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient."). Instead, the inquiry derives from *Strickland*, that is, whether counsel's assistance was reasonable considering all of the circumstances. *Flores-Ortega*, 528 U.S. at 478; *Ortero*, 499 F.3d 1267.

Counsel has a constitutional duty to consult with a defendant about an appeal "when counsel has reason to think either: (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480; *see also Thompson*, 504 F.3d at 1207; *Otero*, 499 F.3d at 1270. This inquiry turns on "highly relevant" factors, such as whether the defendant entered a guilty plea,

whether he received the sentence he bargained for, and whether the plea agreement contained an appellate waiver. *Flores-Ortega*, 528 U.S. at 480; *Otero*, 499 F.3d at 1270.

Here, as in *Otero*, Movant entered into a guilty plea, "which tends to indicate that he was interested in 'seek[ing] an end to judicial proceedings.'" *Otero*, 499 F.3d at 1270 (quoting *Flores-Ortega*, 528 U.S. at 480). Additionally, while Movant's sentence of seventy months on the conspiracy count was slightly higher than the sixty-three month sentence that the Government recommended, it still was far less than any sentence Movant could have received had he proceeded to trial and not received the benefit of reductions for acceptance of responsibility and cooperation. Moreover, the plea agreement contained a valid and enforceable appellate waiver, which allowed Movant to appeal only under certain exceptions, neither of which apply here. Similar to *Otero*, therefore, "on account of the plea agreement's broad appeal waiver, any appeal taken by [Movant] would have been frivolous and would have been an appeal that no rational defendant would have taken." *Otero*, 499 F.3d at 1271.

Finally, Richardson unequivocally stated that there was never any question that Movant would not enter a plea and/or appeal as their focus was on the least amount of prison time and how much of a benefit Movant could receive by cooperating with the Government. That testimony, coupled with the fact that Movant had never proceeded to trial nor appealed any of his previous sixteen

36

convictions - presumably while Richardson had represented him – leads this Court to conclude that Richardson was not under a constitutional obligation to consult with Movant about an appeal.  *See Devine v. United States*, 520 F.3d 1286, 1288-89 (11th Cir. 2008) (affirming district court's finding that counsel did not have an affirmative duty to consult with the defendant about an appeal because he had pled guilty, there were no nonfrivolous grounds for relief, his plea included an appeal waiver, the sentence was at the bottom of the guidelines, and he did not reasonably demonstrate to counsel that he was interested in appealing); *Otero*, 499 F.3d at 1271 ("Because no rational defendant in [the movant's] position would have sought to appeal in light of the broad appeal waiver, and because [the movant] did not communicate to his lawyer a desire to appeal, we conclude that [the movant's] lawyer was not under a constitutional obligation to consult [the movant] about an appeal.").  Accordingly, Movant has not demonstrated ineffective assistance of counsel, and the instant motion to vacate should be denied.

## IV.   Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Rodney Henry's motion to vacate sentence [Docs. 45, 58] be **DENIED WITH PREJUDICE**.

V.      Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325).   In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   Based on the foregoing discussion of Movant's claims, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant did not demonstrate ineffective

38

assistance of counsel and/or that his those claims were without merit, that he voluntarily entered into his plea, and that he procedurally defaulted his claim that the Court sentenced him against the laws of the United States. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 9th day of February, 2017.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

39